**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 23-CR-20336-DSL**

UNITED STATES OF AMERICA

v.

OSCAR BANDEN BURNS,

    **Defendant.**

_____/

**GOVERNMENT'S RESPONSE TO DEFENDANT'S**
**OMNIBUS MOTION IN LIMINE**

The United States of America, by and through the undersigned Assistant United States Attorney, hereby files this response to Defendant Oscar Banden Burns's (hereafter, "Defendant") Omnibus Motion in Limine (DE138) (the "Motion"). First, Defendant seeks to bar testimony central to the carjacking and § 924(c) elements. Specifically, he claims that the victim of a carjacking—a crime that requires the government to prove "intent to cause death or serious bodily harm"—cannot briefly testify to the impact this near-death experience had on her life. This argument ignores Eleventh Circuit precedent affirming the admission of victim-impact testimony—and, moreover, doing so in fraud cases, arguably a closer call than cases involving violent crimes. Defendant also moves to preclude the victim—who has owned a gun for ten years—from testifying that the gun pointed inches from her face was, in fact, a real gun. This argument too ignores binding Eleventh Circuit precedent. Second, Defendant seeks to introduce an open, unrelated state case to impeach the government's cooperator. But Defendant cannot use Rule 404(b) as an end-run around Rule 608(b) and Rule 403, and his argument is once again foreclosed by Eleventh Circuit precedent.

I.   **Victim B.J.'s Testimony**

During the first trial, victim B.J. testified that she had just arrived at work when a car pulled up behind her, blocking her into her parking space, and a masked man robbed her at gunpoint. When asked about the gun, she said:

> Q: Have you ever seen a gun before?
> A: Yes.
> Q: You own a gun?
> A: Yes.
> Q: How long have you been a gun owner for?
> A: Long time. Decade.
> Q: When the person pointed a gun at you, did you think it was real?
> A: Yes.
> Q: Why did you think it was real?
> A: Because I know it was real.  It wasn't no – it wasn't a plastic gun or nothing like that. It was real.

(Tr. Day 2:49).

The government's final question to B.J. was: "How has this carjacking affected you?"  Her response was brief—just four lines in 30 pages of testimony.  She answered: "Turned my life upside down.  At home, if I hear a noise, I have to look down the hallway because I'm afraid.  I don't even go to work that early in the morning.  I don't leave work late.  It's made me frightened when I should have to be frightened." (Tr. Day 2: 60).

**A. Victim B.J., a longtime gun owner, should be permitted to testify that she was threatened with a real gun.**

Burns was charged with carjacking and with brandishing a firearm during and in relation to that carjacking (DE1).  To prove the firearm charge, the government must show:

1) That the defendant committed the carjacking; and

2) During and in relation to that carjacking,

2

> a. the defendant knowingly used or carried a firearm, as charged in the indictment; or
>
> b. the defendant knowingly possessed a firearm in furtherance of that violent crime, as charged in the indictment.

Eleventh Circuit Pattern Jury Instructions (Criminal Cases) 35.4 (2024).

Additionally, the jury must find that the firearm was brandished during and in relation to or possessed in furtherance of the carjacking. Eleventh Circuit Pattern Jury Instructions (Criminal Cases) 35.8 (2024).

The government must show that the gun in question was real, and it can do so through lay testimony. "[A] § 924(c) conviction may be sustained by lay witness testimony that a defendant carried or used a gun." *United States v. Hunt*, 187 F.3d 1269, 1271 (11th Cir. 1999) (per curiam). "The government need not admit the gun itself into evidence, produce an expert witness to identify a firearm, or show with scientific certainty that the defendant's device could fire projectiles to secure a § 924(c) conviction." *United States v. Williams*, 803 F. App'x 379, 381 (11th Cir. 2020) (citing *United States v. Woodruff*, 296 F.3d 1041, 1049 (11th Cir. 2002)).

Defendant's sole argument for excluding key relevant evidence is that "firearms experts are frequently called to testify at trial regarding the authenticity and use of firearms" (Motion at 4). Fair enough. But Defendant can point to no rule or case that requires the government to call such an expert. Moreover, his claim that the victim's gun-related testimony constitutes expert testimony under Rule 702 is simply incorrect, as is his implication that only experts could testify about the authenticity of a gun.

3

The Eleventh Circuit foreclosed Defendant's argument twenty-five years ago. In *United States v. Hunt*, this Circuit joined all other circuits who had addressed the issue in "uniformly conclude[ing] that non-expert witness testimony may be sufficient to establish that a defendant was using a 'firearm' for purposes of sustaining a conviction under § 924(c)(1)." 187 F.3d at 1270-71.

Defendant likewise overlooks *United States v. Woodruff*. In *Woodruff*, the Eleventh Circuit held that sufficient evidence supported the defendant's gun conviction because "the jury heard testimony about the weapon from three of the victims and viewed photographic evidence depicting the gun." 296 F.3d at 1049; *see also United States v. King*, 751 F.3d 1268, 1274 (11th Cir. 2014) (holding there was sufficient evidence to support § 924(c) convictions where the jury heard testimony from victims—several of whom had the weapon thrust into their face—about the gun being used in each robbery and saw videos and photographs of the robberies). The *Woodruff* Court specifically rejected the argument that establishing that a gun qualifies under 18 U.S.C. § 921(a)(3) requires expert testimony. "Contrary to Woodruff's claim, the government need not show to a scientific certainty that a defendant is carrying a device that fires projectiles by means of an explosive." 296 F.3d at 1049 (citing *Hunt*, 187 F.3d at 1271). The Court also noted that the government "need not offer the gun itself into evidence or produce an expert witness to identify a 'firearm,'" but may carry its burden through "the testimony of lay witnesses." *Id.* If the law were as Defendant suggests, then the government would almost never be able to prosecute § 924(c) cases where the gun was not recovered.

4

In brief, victim B.J., like the victims in *Woodruff* and *Hunt*, should be allowed to testify that what she saw was a real gun. Not only is this lay testimony relevant and proper, but it is also sufficient to support the firearm-element of § 924(c).

**B. Victim B.J.'s impact testimony bears on both the "intimidation" and "intent to cause death or serious bodily harm" elements of carjacking**.

To prove carjacking, the government must show, among other things, that the defendant:

1) Took a motor vehicle by force and violence or intimidation; and

2) Intended to cause death or serious bodily harm when he took the motor vehicle.

Eleventh Circuit Pattern Jury Instructions (Criminal Cases) 78 (2024). The instructions define "by intimidation" as follows: "[T]o say or do something that would make an ordinary person fear bodily harm." *Id.* And while it is not a requirement that the victim felt fear, subjective experience is certainly relevant in establishing how a reasonable person would interpret the defendant's conduct. *See Untied States v. Garnett*, 564 F. App'x 959 (11th Cir. 2014) (in examining bank robbery's identical "intimidation" language, explaining that although element of intimidation is "viewed objectively" "it does not follow that evidence of a particular person's subjective fear cannot properly be considered when a jury decides whether a reasonable person would be intimidated by the same conduct"). Indeed, the fact that the defendant's conduct succeeded in scaring the victim supports the inference that it was calculated to do so. *United States v. Graham*, 931 F.2d 1442, 1443 (11th Cir. 1991) (though defendant never brandished weapon, intimidation element was satisfied based on teller's testimony that defendant's conduct caused her to feel afraid).

Defendant sets up a strawman argument and, unsurprisingly, knocks it down. He claims that B.J.'s testimony regarding her experience during and following the carjacking is only relevant

5

when establishing "substantial bodily injury" at sentencing (Motion at 3). He then argues that, because B.J. was not physically harmed, the proffered testimony is irrelevant. But her testimony is highly relevant to the "intimidation" and "intent to cause bodily harm" elements, neither of which contemplate physical injury. Instead, they hinge on the defendant's aggressive conduct and the victim's experience. As noted, the victim's fear directly bears on whether a reasonable person would be intimidated by the same conduct. And the magnitude of that fear directly links to the level of intimidation the defendant displayed. To properly capture the scope of the witness's fear—and therefore assess the intimidation factor—the jury should hear whether the defendant's conduct impacted the victim beyond the instant of the robbery. In other words, there's a marked difference—when assessing intimidation—between a victim who never thought about the defendant's conduct again, and a victim who was haunted by the ordeal.

Relatedly, B.J.'s testimony about how the carjacking affected her life will also help the jury assess her credibility. Fear and intimidation, coupled with an intent to cause death or serious injury, leave a lasting impression on a person. Thus, it would be appropriate for a jury to consider this lasting impression in determining whether the victim really did feel emotions in the moment. And that subjective fear directly bears on the objective standard. *See Graham*, 931 F.3d at 1443 (rejecting defendant's argument that government failed to show intimidation because he never made any "obvious threatening gestures," where victim teller testified she was afraid). That B.J. was not physically harmed does not preclude her from explaining that she was intimidated. In fact, her testimony is even more crucial because the jury will not have physical injuries to rely on in their assessment of this element.

In other contexts, the Eleventh Circuit has upheld the admission of victim impact testimony, provided the testimony related to an element of the charged offense. In *United States v. Wheeler*, the defendants ran a telemarketing scheme aimed at defrauding stock investors. 16 F.4th Cir. 805 (11th Cir. 2021). At trial, the victim investors testified about the scope of their losses and how those losses impacted their lives. *Id.* at 828. Some victims testified that the defendants' scheme cost them the ability to pay for their child's surgery, while others reported being unable to pay for a grandchild's college tuition. *Id.* The Eleventh Circuit held this evidence was admissible because it "came into evidence to illustrate that the defendants would learn about the victims' personal lives, gain their trust, and then use that trust to exploit them." *Id.* And so, the evidence was helpful in establishing intent and knowledge.

In this case, the evidence ties even more directly to two key elements of the carjacking charge: namely, "intimidation" and "intent to harm," as discussed above. Moreover, the potential for unfair prejudice is especially attenuated in this case—more attenuated than in *Wheeler*, even— because the jury will already be exposed to evidence that involves violence. Unlike the testimony in *Wheeler*, which was arguably removed from the bulk of the government's fraud evidence, here, the victim's experience after the carjacking is not materially different from her testimony about the event itself.

Other circuits have likewise admitted victim-impact evidence where it bears on an element of the charge. *See United States v. Cloud*, 680 F.3d 396, 402 (4th Cir. 2012) ("[V]ictim-impact testimony was relevant to show intent to defraud . . . ." (citing *United States v. Copple*, 24 F.3d 535, 545 (3d Cir. 1994)).

Last, in moving to exclude highly relevant evidence, Defendant supplies no authority to support his extraordinary ask. And the case he does cite undercuts his point (Motion at 2-3). In *United States v. Kruse*, 601 F. App'x 827 (11th Cir. 2015), the Eleventh Circuit, affirmed the admission of victim impact testimony. *Id.* at 829. At trial, Kruse's victims testified "that their life savings were wiped out, [and] that one victim could not pay the medical bills." *Id.* This evidence was "relevant to the materiality of appellant's misrepresentations concerning the safety of the investment for retirement funds, and also relevant to these victims' reliance on appellant's misrepresentations." *Id.* And while the court was concerned about the "extensive amount of such evidence,"[1] it cannot be said that asking B.J. a *single* question—which she previously answered in just four lines—crosses the line into "extensive" impact evidence.

**II.     Defendant Cannot Cross a Government Witness on an Open Florida Case That Has No Relationship to Truthfulness.**

Burns seeks to impeach the government's cooperating witness, Rayneo Blanc, with an open case that does not involve a crime of dishonesty and that does not stem from the facts involved in this prosecution. Because the evidence does not bear on the witness's character for truthfulness, it is barred under Rule 608(b). And because the defendant's theory is hopelessly speculative it cannot pass Rule 403 muster and fails the Rule 404(b) test. Moreover, the proposed evidence is cumulative of the impeachment material that is admissible in this case. Accordingly, this Court

---

[1] In *Kruse*, at least 9 victims testified about the impact of the fraud on their lives. One victim, whose husband suffered from dementia, testified that she was scammed out of her life savings. (*Kruse*, Middle District of Florida Case No. 3:12–cr–00052–HES–JBT–1., DE196:163). Another victim, a Navy veteran, testified that he lost nearly $20,000 of his service salary, which constituted a decade's worth of savings. (DE197:162-63).

should reaffirm its earlier ruling and bar the defense from asking questions about that unrelated, pending state case.

Federal Rule of Evidence 608(b) provides:

> Except for a criminal conviction under 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attach or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of (1) the witness; or (2) another witness whose character the witness being cross-examined testified about.

Rule 608 begins with a general prohibition against extrinsic evidence. It then creates a narrow exception for "inquiries" (not extrinsic evidence) related to prior acts that "are probative of the character for truthfulness." Not all crimes are probative of truthfulness, as the Eleventh Circuit has previously explained. *See United States v. Sellers*, 906 F.2d 597 (11th Cir. 1990) (theft charges have no bearing on character for truthfulness).

This Court previously excluded the proposed evidence in the first trial, and the defense provides no reason to overturn that sound decision. In the previous trial, Cesar's attorney asked to impeach Blanc with this same open Florida case for burglary—a burglary that, it bears emphasizing, is wholly unrelated to the charged offense (Tr. Day 3: 28-29). Counsel argued the witness had a motive to lie to curry favor with the government, despite the fact that the U.S. Attorney's Office (or the federal government more generally) was not the prosecuting authority in the state case. The government argued that the proposed evidence was inadmissible under Rule 608(b), because it was an alleged bad act that was unrelated to the witness's character for truthfulness. The Court excluded the evidence, explaining:

> This is an arrest … and whatever it alleges, it's open, it is long before the charged conduct here. There's nothing about the charge of burglary on the face of the criminal history report that relates in any way to this case. … [U]nder the language

> of 608(b), it is not probative for truthfulness or untruthfulness of the witness.   It is not also probative of truthfulness or untruthfulness of another person that could come into this case if it was allowed to be inquired about.
> (Tr. Day 3:31).

The Eleventh Circuit adopted very similar reasoning in *United States v. Sellers*, 906 F.2d 597 (11th Cir. 1990), where it blocked virtually identical evidence.   In that case, the defendants wanted to impeach the government's witness using a prior unrelated and unresolved theft case. On appeal, the defendants argued that the pending case was prior conduct bearing on untruthfulness under Rule 608(b), an argument the Eleventh Circuit roundly rejected. *Id*. at 603 (explaining that "theft … has no such bearing").

The *Sellers* defendants also argued—just as Burns does here—that the pending charge constituted impeachment evidence because it showed the witness had a motive to lie. *Id.* The Eleventh Circuit rejected this theory as "hopelessly speculative and vastly outweighed by the potential for unfair prejudice." *Id*.   It contrasted the defendants' situation with cases involving "promises of leniency or immunity as to pending charges against a witness in return for testimony." *Id*.   In other words, for a pending charge to have even marginal probative value, the defendant must do more than allege motive to lie—the motive must be anchored in promises of leniency. *See United States v. Farmer*, 923 F.2d 1557, 1567 n. 23 (11th Cir. 1991) (reaffirming *Sellers* decision in excluding pending-case evidence); *United States v. Cross*, 638 F.2d 1375, 1380-81 (5th Cir. Unit A 1981)("It cannot be seriously maintained that, because [the witness] had 'other charges' pending against him …, he was motivated to lie before the grand jury.").   In the present case, not only are there no such promises, but the government simply cannot control an independent sovereign's actions. *Gamble v. United States*, 587 U.S. 678, 688-89 (2019) (outlining roots of dual-sovereignty rule and noting that "the people, by adopting the Constitution, 'split the atom of

10

sovereignty.'") (internal quotation marks omitted).  Burns's conclusion—*i.e.*, that the witness has a motive to lie because he wishes to secure a favorable deal in state court—stems from two unstated and faulty assumptions.  He assumes that the government—meaning, this team of federal prosecutors—has the power to help the witness secure such a deal from state prosecutors.  He further speculates that, if the federal government can help the witness resolve his state case, the witness will alter his testimony to please the government.  Because nothing on the record supports either assumption, Burns' argument is fatally flawed.

Burns, like the *Sellers* defendants, appears to be following "a strategy of putting [the witness] on trial in place of [the defendants]," *id*. at 604, something the rules of evidence do not allow.  His claim that the unresolved case supplies a motive to lie is "hopelessly speculative," and fails Rule 403's test.  Moreover, presenting this evidence will undoubtedly create a sideshow, as the defense will build a case entirely around the witness's criminal history or unrelated matters.

Nor is this the only (or even particularly strong) impeachment that is available.  As they did in the first trial, the defense will be able to cross the witness on his federal carjacking conviction, his unresolved state case for the same underlying offense, and his prior statement to authorities.  If the defense wants to argue the witness has a motive to curry favor with the government, they may cross the witness on his plea agreement and the related open case in the state.  But an unresolved, unrelated state case for conduct that has no bearing on truthfulness goes a bridge too far.  This is blatant propensity evidence, with no probative value beyond pitting the jury against the witness, which is improper.  *See United States v. Cohen*, 888 F.2d 770, 776 (11th Cir. 1989) ("Although the standard for admission is relaxed when the evidence is offered by a

defendant … the party advancing the evidence must demonstrate that it is not offered to prove the character of a person in order to show action in conformity therewith.").

Finally, Burns's reliance on Rule 404(b) is misplaced, and stems from a misunderstanding of how the rules of evidence interact with each other. Rule 404(b) provides that other acts evidence "may be admissible" to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." When a defendant advances the prior-acts evidence, "a district court should consider whether the evidence bears 'special relevance' to the defendant's guilt, and whether there are any other practical means by which the defendant could prove this point." *United States v. Aguirre*, 368 F. App'x 979, 990 (11th Cir. 2010) (citing *Cohen*, 888 F. 2d at 775-76).

In this case, Burns is not arguing that the unrelated state charge tends to establish a disputed fact—his stated use is impeachment only. This is not the usual reverse 404(b) case where, say, the defense seeks to introduce prior-acts evidence to show that the witness had the motive, opportunity, or skill to commit the charged offense alone, without the aid of the defendant. *See Cohen*, 888 F.2d at 772, 776 (defense sought admission of witness's prior participation in similar fraud scheme to prove that witness could concoct such a scheme without defendant's aid). And, as noted above, the defense argument as to impeachment is fatally flawed. The only practical effect of introducing this evidence will be to inflame the passions of the jury and paint the witness as a criminal with a propensity to do criminal things. This use of the evidence is squarely within Rule 404(b)'s prohibition. *See United States v. North*, 762 F. App'x 813, 818 (11th Cir. 2019) (affirming exclusion of witness's prior conviction for filing false reports under Rule 404(b), because defense failed to articulate non-propensity reason for admission and only purpose of

12

proposed evidence was to show witness acted in accordance with prior bad conduct); *see also United States v. South*, 295 F. App'x 959, 969-70 (11th Cir. 2008) (affirming exclusion of misdemeanor conviction for threatening a contractor under Rule 608, 609 and 404(b), because offense did not involve crime of dishonesty, and "the purpose of this evidence was to show that [informant] acted in conformity with his prior bad conduct").

This Court should deny Burns's request to use this irrelevant and inflammatory evidence.

## **Conclusion**

Defendant's omnibus motion should be denied.

                                             Respectfully submitted,

                                             MARKENZY LAPOINTE
                                             UNITED STATES ATTORNEY

By:    /s/ *Yeney Hernandez*
           YENEY HERNANDEZ
           Assistant United States Attorney
           Court ID No. A5502300
           99 Northeast 4th Street
           Miami, Florida 33132-2111
           Tel.: (305) 961-9277
           Fax: (305) 530-7976
           Email: Yeney.Hernandez@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 2, 2024, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.

/s/Yeney Hernandez
Assistant United States Attorney