UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CR-20336-LEIBOWITZ

UNITED STATES OF AMERICA

v.

OSCAR BANDEN BURNS,

    **Defendant.**
_____/

**UNITED STATES' RESPONSE TO THE DEFENDANT'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT**

The United States of America hereby files this Response to the Defendant's Objections to the Presentence Investigation Report ("Objections"; DE 210), and states as follows:

**I.    RESPONSE TO FACTUAL OBJECTIONS**

    **A.    Paragraph 5**

The Defendant objects to the facts contained in paragraph 5 and contends that Rayneo Blanc ("Blanc")—and not Defendant Burns—crashed the white Hyundai Tucson used to commit the carjacking in this case. (DE 210:1). The United States disagrees with Defendant Burns as to this portion of the objection.

*First*, Defendant Burns is wrong about his contention regarding who was responsible for crashing the white Hyundai Tucson, and the United States points to Blanc's uncontroverted testimony at trial about this topic to show this. It is "well established that a sentencing judge may take into account facts introduced at trial . . . ." *United States v. Watts*, 519 U.S. 148, 152 (1997) (citation and internal quotation marks omitted). At trial, Blanc testified that Defendant Burns crashed the white Hyundai Tucson. No other evidence was introduced at trial to rebut that statement. As such, the Court should consider Blanc's statement and overrule Defendant Burns'

objection as to this portion of paragraph 5.

*Second*, Defendant Burns objects to additional facts in paragraph 5 stating that he received citations. (DE 210:1). The United States agrees with this portion of the objection. As such, the United States recommends that paragraph 5's text change from "Burns was cited for running a stop sign" to "**Rayneo Blanc was cited for running a stop sign**" and **omit** the last portion of the sentence "**which caused the crash**."

### B. Paragraph 8

The Defendant object to the facts contained in paragraph 8 and contends that "Burns' fingerprints were not found inside the rental car . . . ." (*Id.* at 2). The United States agrees. As such, it recommends that the text in paragraph 8 should change from "Burns, Blanc, and Cesar's fingerprints were found inside the rented Tucson" to "**Blanc and Cesar's fingerprints were found inside the rented Tucson. Defendant Burns fingerprints were found on the exterior of the rented Tucson**."

### C. Paragraph 13

The Defendant objects to the facts contained in paragraph 13 and contends that, *inter alia*, "there was no evidence at trial regarding any of the leadership or leadership roles aspect of this case." (*Id.*). The United States disagrees and, once again, points to the evidence that was admitted at trial.

At trial, the Court and members of the jury heard from Blanc. Blanc explained the innerworkings of the conspiracy between Defendant Burns, Cesar, and himself. He further identified the roles each defendant played in the conspiracy. In essence, Blanc's testimony showed that he was the lookout/looter. Defendant Cesar was the getaway driver. And Defendant Burns was the shot caller.

Defendant Burns was the sole authority and decision-maker of the conspiracy and took various steps to corral Blanc and Cesar to commit the carjacking with him. The following five points taken from Blanc's testimony and video evidence admitted at trial help reach this conclusion. *First*, Blanc explained that Defendant Burns stated that the way to fix the damage caused to the white Tucson was to steal another similar Tucson and strip it for spare parts. Blanc and Cesar agreed with *his* plan. *Second*, Defendant Burns commanded Blanc and Cesar to meet at a specific place and time on the date of the carjacking—prior to daybreak and at Blanc's front yard. *Third*, Defendant Burns drove the white Tucson to the carjacking destination. *Fourth* and most importantly, Defendant Burns determined who was going to be the victim of the carjacking, what car was to be stolen, and where the carjacking was to occur. *Fifth*, Defendant Burns commanded Blanc and others to burn the stolen Tucson to destroy evidence of the crime.

As such, the Court should overrule the Defendant's objection to paragraph 13.

### D. Paragraph 14

The Defendant objects to the facts contained in paragraph 14 and contends that "there was no evidence at trial regarding who directed the victim's car to be burned." (*Id.* at 3). The United States disagrees. Blanc testified at trial that Defendant Burns directed him and others to burn the victim's car because he wanted to destroy potentially incriminating evidence. No other evidence admitted at trial rebutted this point. As such, the Court should overrule the Defendant's objection as to paragraph 14.

### E. Paragraph 15

The Defendant objects to the facts contained in paragraph 15 and contends that the note passed by Defendant Burns to Defendant Cesar during trial ("Note") did "not make any threat to Cesar." (*Id.*). The United States disagrees. Defendant Burns could not have made his intention

3

behind the Note clearer when he wrote to Defendant Cesar "[j]ust pray I don't get a guilty." Those words sound threatening because they are to be perceived *as a threat*. And they were perceived as a threat by Defendant Cesar because after the Note came to light, the Court ordered that both Defendant Burns and Cesar be separated while in custody. As such, the Court should overrule the Defendant's objection as to paragraph 15.[1]

### F. Paragraphs 17 and 204

The Defendant objects to the facts contained in paragraph 17 which pertains to the restitution amount owed to the victim. The United States will provide the pertinent documentation to defense counsel prior to the sentencing hearing and will be prepared to introduce evidence at the sentencing hearing of the total loss amount, if necessary.

## II. RESPONSE TO LEGAL OBJECTIONS

### A. Paragraphs 16 and 24

The Defendant objects to the two-level role enhancement for being an organizer, leader, manager, or supervisor in any criminal activity. U.S.S.G. § 3B1.1(c). The United States disagrees with Defendant Burns' objections and requests that the Court overrule them.

Defendant Burns organized the conspiracy, led it, and supervised the co-conspirators during and after the carjacking of the victim's car. Under section 3B1.1(c) of the sentencing guidelines, if "the defendant was an organizer, leader, manager, or supervisor in any criminal activity . . . increase [the defendant's offense level] by 2 levels." *United States v. Jiminez*, 224 F.3d 1243, 1250 (11th Cir. 2000) (citing U.S.S.G. § 3B1.1(c)). "In distinguishing a leadership role, the district court should consider 'the exercise of decision making authority, the nature of participation

---

[1] The United States also objected to paragraph 15 and requested that the paragraph be supplemented with additional facts, *i.e.* a summary of the jail call between Defendant Burns and Blanc prior to Blanc's arrest and custodial interview. (DE 212:2).

in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.'" *United States v. Phillips*, 287 F.3d 1053, 1058 (11th Cir. 2002) (quoting U.S.S.G. § 3B1.1(c) cmt. (n.4)).  Courts have determined that "the assertion of control or influence over only one individual is enough to support a § 3B1.1(c) enhancement." *Jiminez*, at 1251 (citing *United States v. Glover*, 179 F.3d 1300, 1302 (11th Cir. 1999)).

To no surprise, Defendant Burns' actions in organizing and leading the carjacking fall neatly within almost all the factors for consideration of a leadership role.  *First*, Defendant Burns was the sole authority for decision-making in this criminal venture.  To show this, he vetted the roles of each co-conspirator prior to the carjacking, chose the time and place for co-conspirators to rendezvous prior to the carjacking, chose the victim of the carjacking, chose when and where the carjacking would occur, and commanded others to tear apart the victim's car for scraps and to subsequently burn it to conceal their crimes.  In other words, all roads for decision-making began and ended with Defendant Burns' approval.

*Second*, as described above, Defendant Burns' participation in the carjacking was extensive.  Aside from having unfettered discretion as to how and when the carjacking would occur, Defendant Burns proved to also be the muscle behind the crime.  Indeed, Defendant Burns was the individual who blocked the victim's path, pointed a gun at her, and stole her car.

*Third*, Defendant Burns recruited both Blanc and Defendant Cesar to commit the carjacking.  At trial, Blanc testified that Defendant Burns hatched the plan for the carjacking and recruited both Defendant Cesar and him to commit the carjacking with him.

*Lastly*, Defendant Burns controlled an exorbitant amount of authority over his co-

conspirators and others. Simply put, he approved each co-conspirator's role, told them when and where to meet prior to the carjacking, and chose the target of the carjacking.

But there is more. Defendant Burns displayed his authority in various 1080p recordings that captured his actions post-carjacking. In those videos, which were admitted as evidence during the trial, Defendant Burns was captured supervising and commanding a host of bandits and Blanc as they scrapped the stolen Tucson and inevitably burned it.

All of these reasons provide a basis for the Court to overrule the Defendant's objections.

### B.     Paragraphs 18 and 25

The Defendant objects to the two-level enhancement for obstruction of justice. U.S.S.G. § 3C1.1. The United States disagrees with Defendant Burns' objections and requests that the Court overrule them.

"Pursuant to § 3C1.1, a two-level enhancement is warranted when the defendant willfully obstructs the investigation, prosecution, or sentencing of his offense of conviction, in a manner related to his offense of conviction, relevant conduct, or a closely related offense." *United States v. Simpson*, 283 F. App'x 747, 751 (11th Cir. 2008). The commentary provides a non-exhaustive list of conduct that might apply to the enhancement such as: "threatening, intimidating, or otherwise unlawfully influencing a codefendant, witness, . . . directly or indirectly, or attempting to do so . . . ." U.S.S.G. § 3C1.1, cmt. (n.4).

Defendant Burns used different tools and channels to obstruct justice. The following are a few ways he did so. He commanded others to burn the car they stole not for the fun of it, but specifically to destroy evidence he knew would link him to a crime. He also attempted to threaten a co-defendant to testify to suborn perjury through the Note.

But Defendant Burns most flagrant and conspicuous attempt at obstructing justice can be

found on a recorded jail call between him and Blanc.  In the jail call, Defendant Burns called Blanc and told him that he should not tell the police what happened with respect to the carjacking.  What is more, he took it a step further and told Blanc that if the police attempted to speak with him about the carjacking, Blanc should tell the police that *he does not know anything* about the carjacking.  Indeed, Defendant Burns' influence on others to obstruct justice did not stop short of the four corners of a jail cell.

As such, the Court should overrule Defendant Burns' objections.

        **C.**        **Paragraphs 27, 40–45, and 195**

The Defendant objects to the career offender enhancement and certain prior convictions because "the Government has not provided any evidence that Mr. Burns committed those offenses." (DE 210:6).  The United States disagrees with the objections and requests that the Court overrule the objections.

*First*, Defendant Burns is a career offender because the instant conviction is a crime of violence, and he has at least two prior convictions that qualify as crimes of violence.  U.S.S.G. § 4B1.1(a).  Predictably, the "term 'crime of violence' as Congress defined it . . . *clearly includes carjacking*." *In re Smith*, 829 F.3d 1276, 1280 (11th Cir. 2016) (emphasis in original).

Next, we move to consider whether Defendant Burns' two prior convictions for Florida resisting an officer with violence qualify as crimes of violence.  (PSI ¶¶ 43, 45).  They do.  *See United States v. Romo-Villalobos*, 674 F.3d 1246, 1252 (11th Cir. 2012) (finding that Florida resisting an officer with violence qualifies as a crime of violence).

*Second*, Defendant Burns contends that the United States has not met its burden of proving he is a career offender and that the other convictions are his, *yet*.  Rest assured, the United States will provide sufficient evidence at the sentencing hearing to show that these are Defendant Burns'

7

prior convictions by producing certified copies of them.

## CONCLUSION

The Court should overrule Defendant's objections to the PSI in accordance with the government's arguments discussed above.

                                    Respectfully submitted,

                                    HAYDEN P. O'BYRNE
                                    UNITED STATES ATTORNEY

BY:    s/ *Stefan Diaz Espinosa*
          Stefan Diaz Espinosa
          Assistant United States Attorney
          Florida Bar No. 1010217
          99 N.E. 4th Street, 7th Floor
          Miami, Florida 33132-2111
          T. (305) 961-9124
          Stefan.Diaz.Espinosa@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was filed using CM/ECF on March 7, 2025.

                                         s/*Stefan Diaz Espinosa*
                                         Stefan Diaz Espinosa
                                         Assistant United States Attorney