UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CR-20336-LEIBOWITZ

UNITED STATES OF AMERICA

v.

OSCAR BANDEN BURNS,

    Defendant.
_____/

**UNITED STATES' SENTENCING MEMORANDUM AND RESPONSE TO DEFENDANT'S SUPPLEMENTAL OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT**

    The United States of America hereby files this sentencing memorandum, incorporating its response to Defendant Oscar Banden Burns's ("Defendant") supplemental objections to the Presentence Investigation Report (DE216). Defendant argues he should receive a three-level acceptance-of-responsibility reduction because a different court in another jurisdiction is *considering* giving the reduction to a different defendant, under materially different circumstances. Eleventh Circuit precedent dictates that Defendant—who tried to lie and threaten his way out of federal court, and who has never taken responsibility for destroying a 63-year-old woman's peace of mind—should not receive this benefit. More to the point, Defendant is a violent and volatile offender who regularly targeted the most vulnerable members of society, including the elderly and pregnant women, and has shown zero remorse for his conduct. He revealed his true nature both before and during trial, where he disrupted proceedings and even threatened his co-defendant. His sentence should reflect, not just the seriousness of his offense, but the undeniable danger he presents to the community.

I.  **RESPONSE TO SUPPLEMENTAL OBJECTION**

Defendant argues he should receive a three-point reduction for acceptance of responsibility because withholding this benefit would violate his Sixth Amendment rights. He cites no in-Circuit authority, nor can he, because the controlling case on this issue, *United States v. Henry*,[1] cuts against him. More importantly, he ignores—and asks this Court to ignore—the egregiousness of his conduct before and during trial. While in prison for a different carjacking, Defendant called his co-defendant, Rayneo Blanc, and coached him on what to tell police in this case. At trial, Defendant tried to threaten his other co-defendant, Schnaider Cesar, with a note that read: "You played by even lying on me … Just pray that I don't get a guilty." (Exhibit 1). Defendant's objective is and has always been to thwart the investigation and evade responsibility for his wrongs. He should not be rewarded with a reduction.

Guidelines § 3E1.1(a) authorizes a two-level reduction where a defendant "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). A defendant may be denied an adjustment if he puts the government to its burden of proof at trial, is convicted, and only then admits guilt and remorse. *United States v. Tejas*, 868 F.3d 1242, 1247 (11th Cir. 2017). Ordinarily, going to trial is a challenge to the factual basis for the government's charge. *Id.*

The Eleventh Circuit "permits a district court to deny a defendant a reduction under § 3E1.1 based on conduct inconsistent with acceptance of responsibility, even when that conduct includes the assertion of a constitutional right." *United States v. Wright*, 133 F.3d 1412, 1414 (11th Cir. 1998) (citing *United States v. Smith*, 127 F.3d 987, 989 (11th Cir. 1997) (en banc)); *see also United States v. McDonald*, 935 F.2d 1212, 1222 (11th Cir. 1991) (holding that § 3E1.1 does not "infringe

---

[1] 883 F.2d 1010 (11th Cir. 1989) (rejecting defendant's Fifth and Sixth Amendment challenge to § 3E1.1).

2

on [a defendant's] right to appeal because he was unable to express acceptance of responsibility for his deeds at the sentencing hearing while he anticipated bringing his appeal"); *United States v. Jones*, 934 F.2d 1199, 1200 (11th Cir. 1991) ("[T]he court's consideration, at sentencing, of the defendant's denial of culpability at trial does not impermissibly punish the defendant for exercising his constitutional right to stand trial.").

In *United States v. Henry*, the Eleventh Circuit held that conditioning sentence reductions on a defendant's acceptance of responsibility does not violate the Fifth or Sixth Amendment. 883 F.2d at 1012. The Court, in outlining the provision's pre-Guidelines roots, noted that "Section 3E1.1 formalizes and clarifies that tradition of leniency" and to hold it unconstitutional "would be to say that defendants who express genuine remorse for their actions can never be rewarded at sentencing. This the Constitution does not require." *Id*. The Eleventh Circuit reaffirmed *Henry* in *United States v. Carroll*, reversing a district court for erroneously granting the § 3E1.1 reduction based on the mistaken assumption that withholding it would "penalize" defendants for exercising their rights. 6 F.3d 735, 740 (11th Cir. 1993). The *Carroll* Court observed: "the reduction for acceptance of responsibility is a reward for those defendants who express genuine remorse for their criminal actions," and to deserve it a defendant must "do more than sit quietly and take his medicine." *Id*. And although the above cases arose in the context of § 3E1.1(a) (the two-point reduction), the Eleventh Circuit has recognized the government's control over the third point under § 3E1.1(b). *Spriggs v. United States*, No. 19-13238, 2022 WL 2345758, at *15 (11th Cir. June 29, 2022).

In this case, Defendant can point to no affirmative acceptance of responsibility. Far from it, his actions betray a complete lack of remorse. At his second trial, while victim B.J. was on the stand reliving the worst moment of her life, Defendant unzipped his pants and prepared to relieve

3

himself in open court. Able counsel's quick thinking saved the moment, precluding the jury from witnessing Defendant's antics. He only got worse as trial progressed. Shortly before closing, Defendant tried to threaten his co-defendant. That time, it was the marshals who saved the day and prevented the note from reaching Cesar.

Defendant's intent has been clear from the day he called Blanc and told him, "You supposed to tell [police] you don't know nothing," and "I was in Orlando." (GX54 (audio) & 54A:6, 7 (transcript)). He wants to avoid responsibility for what he did, by whatever means necessary. From creating a distraction during victim B.J.'s testimony, to attempting to slip a threat to his co-defendant, Defendant has shown nothing but contempt for justice and the institutions trying to hold him accountable. To reward his behavior risks undermining everything § 3E1.1 stands for.

## II.     SENTENCING FACTORS

Defendant is the consummate career offender, with experience in drug distribution, grand theft, and everything in between. Preliminarily, Defendant's challenge to his career offender designation is absurd.[2] His 2016 and 2020 convictions for resisting arrest with violence make him a career offender.[3] (*See* Exhibits 2 (certified convictions) & 3 (fingerprint analysis)). Crucially,

---

[2] It also undermines his acceptance of responsibility argument. Far beyond refusing to admit his crime, Defendant will not even admit the undeniable—that he is the Oscar Banden Burns who was twice convicted of resisting arrest with violence.

[3] Under Florida law, resisting arrest with violence consists of "knowingly and willfully" resisting, obstructing, or opposing any officer "by offering or doing violence to the person of such officer." Fla. Stat. § 843.01(1). Accordingly, this crime falls within the elements clause of §4B1.2(a). *See also United States v. Deshazior*, 882 F.3d 1352, 1355 (11th Cir. 2018) (resisting arrest with violence is a crime of violence under Armed Career Criminal Act); *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008) ("This court has repeatedly read the definition of 'violent felony' under § 924(e) of the Armed Career Criminal Act as 'virtually identical' to the definition of 'a crime of violence' under U.S.S.G. § 4B1.2").

4

Defendant's criminal record tells a compelling story, the story of a violent man who uses force to take what he wants from a vulnerable community.

Defendant's adult criminal record begins with drugs and guns, two elements that define his criminal career. At the age of 20, he was convicted of trafficking in cocaine (PSI ¶ 32). To aid in his drug trafficking, he possessed a 9mm Luger with an obliterated serial number (*id*.). For his crimes, he served *no* jail time; instead, he was placed on probation for 67 days (*id.*). This was the only time Defendant completed probation without incident—and just barely. Within months of completing this sentence, Defendant stole a car (*id*. at ¶ 33). Again, he received a sentence of probation, which he violated almost immediately (*id.* at ¶¶ 33-34). Not long after that, Defendant committed three separate drug violations, which were combined for sentencing purposes (*id*. at ¶¶ 34-36). He was sentenced to 18 months' probation and, within three months, began violating his probation (*id*.). Defendant also has several resisting arrest convictions, only one of which resulted in a prison sentence (*id*. at ¶¶ 37, 40, 42). Another defining feature of Defendant's criminal conduct is his tendency to use false names and tamper with evidence, tactics aimed at avoiding responsibility for his crimes (*id*. at ¶¶ 35, 36, 40, 43). And despite being given every opportunity to course-correct, Defendant chose to escalate his wrongdoing. A cursory review of his PSI shows why: he has never had to contend with the consequences of his actions. Indeed, at age 32, Defendant led law enforcement on a high-speed chase—motivated, no doubt, by the fact that he was driving a stolen car, with a suspended license, and hiding cocaine. Yet, he received only 30 months in prison, which remains by far the most significant punishment any court has imposed on him. Had this been his only conviction up to that point, the sentence may have afforded adequate deterrence and accounted for his crimes, but this was his *twelfth* sentencing (including adjudication-withheld cases).

5

Defendant's arrest record is equally troubling, and this Court should consider it in fashioning an appropriate sentence. *See United States v. Webman*, 760 F. App'x 904 (11th Cir. 2019) (affirming upward variance based in part on defendant's juvenile and arrest records, as well as defendant's adult convictions); *United States v. Shaw*, 560 F.3d 1230, 1232-41 (11th Cir. 2009) (affirming 83-month variance, partially relying on defendant's numerous prior arrests); *see also* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court … may receive and consider for purpose of imposing an appropriate sentence").

Defendant took to violence early, beginning with strongarm robbery and battery (PSI ¶¶ 48, 49, 51, 53). His violent streak escalated, and, at age 15, he placed his pregnant sister in a full Nelson when she tried to intercede on behalf of his brother (*id*. at ¶ 54). Nor can Defendant use his youth as a shield, because he has consistently targeted pregnant women throughout his adult life. At age 26, he yanked his pregnant victim's arm and dragged her bodily toward his car (*id*. at ¶ 102). One year later, Defendant punched his pregnant girlfriend several times and pulled her hair in a fit of jealousy (*id*. at ¶ 108-109). The year after that, Defendant pushed his pregnant victim—who had a restraining order against him—into a bedroom and climbed on top of her to get her phone, which he suspected she was using to text other men (*id*. at ¶ 115). When she called out for help, he fled with her phone and threw it over a fence (*id.*). This reveals yet another pattern to Defendant's criminality: he targets female victims. In addition to B.J., the 63-year-old grandmother he assaulted with a gun (for a $200 bumper), Defendant victimized at least ten other women (*id*. at ¶¶ 94, 95, 96, 97, 102, 105, 107, 108-109, 115, 116, 123). Defendant's go-to enforcement maneuvers in these criminal episodes included choking (*id*. at ¶¶ 93, 94), arm-twisting (*id*. at ¶¶ 108-109), and—as Betty declared at trial—assault with a firearm (*id*. at ¶¶ 67, 96, 123).

Paragraphs 96 and 134 of Defendant's PSI warrant a closer look, as the facts underlying these murder charges are particularly gruesome. Defendant put a gun to a woman's head, choked her until she lost consciousness, then pressed a knife to her throat (PSI ¶ 96). He did this because she had taken his marijuana without permission (*id.*). Drugs feature prominently in Defendant's criminal history, and link directly to the present charges. As discussed in the government's Trial 1 motion *in limine* (DE86), just hours before the carjacking, Defendant stood sentry at a "trap house," a drug-distribution hub that the parties at trial sanitized with the phrase "Blanc's neighbor's house." The government clipped the trap house video to avoid a Rule 403 challenge, but the complete footage shows Defendant standing guard while dozens of drug transactions take place (*id*. at 8). He was more an than an addict, he was an enforcer who ruthlessly guarded his and others' drugs. Last, while in state pretrial detention, Defendant was captured on surveillance video receiving a makeshift knife that had been used to stab another inmate (PSI ¶ 134). He then gave the knife to another inmate who washed and cleaned the weapon (*id*.). And although these charges, too, were dropped, they fit Defendant's pattern of violence to a tee.

But even setting aside the horrific conduct described in the PSI, the sheer volume of arrests in Defendant's record should give this Court pause before releasing him into the community he poisoned and brutalized for decades. He has *92 arrests* that did not result in a conviction or withhold of adjudication (PSI ¶¶ 47-138). Separately, he has 14 arrests that *did* yield a conviction or withhold (*id*. at ¶¶ 32-45). Since the age of 12, and setting aside times when he has been incarcerated, Defendant has not gone three months without an arrest.

Plainly, Defendant is a man who scoffs at the law. He has built a criminal career around taking things by force—a car, a person's sense of security and physical integrity. And in victim B.J.'s case, both.

## **CONCLUSION**

The Court should not grant an acceptance-of-responsibility reduction to Defendant, who remains as remorseless today as the day he held up an elderly woman at gunpoint.  And because the lenient sentences he received in the past did nothing to deter Defendant's violent crimes, the Court should impose a sentence that will protect his would-be victims, that is, the elderly, pregnant women, and the public at large.

    Respectfully submitted,

    HAYDEN P. O'BYRNE
    UNITED STATES ATTORNEY

BY:   *s/ Yeney Hernandez*
       Yeney Hernandez
       Assistant United States Attorney
       Court ID No. A5502300
       99 N.E. 4th Street, 8th Floor
       Miami, Florida 33132-2111
       T. (305) 961-9277
       Yeney.Hernandez@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed using CM/ECF on March 13, 2025.

*s/Yeney Hernandez*
Yeney Hernandez
Assistant United States Attorney
